## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| J.O.P, *et al.*, | : | |
| | : | |
| Appellees, | : | |
| | : | |
| v. | : | No. 25-1519 |
| | : | |
| U.S. Department of Homeland | : | |
| Security, *et al.* | : | |
| | : | |
| Appellants. | : | |

## APPELLANTS' MOTION FOR STAY PENDING APPEAL

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................... ii

TABLE OF AUTHORITIES........................................................... iii

INTRODUCTION ...........................................................................1

BACKGROUND...............................................................................3

ARGUMENT..................................................................................11

   I.   The Government Is Likely To Succeed on the Merits.............................11

     A.  There was no breach of the settlement agreement..............................12

     B.  The Indicative Asylum Decision makes the return order inequitable......16

   II.  The Equities Favor a Stay of This "Facilitation" Order...........................19

CONCLUSION................................................................................21

## TABLE OF AUTHORITIES

**Cases**

Abrego Garcia v. Noem,
   No. 25-1404, 2025 WL 1135112 (4th Cir. Apr. 17, 2025) ..............................1

Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.,
   333 U.S. 103 (1948)...................................................................................17

Citizens Protective League v. Clark,
   155 F.2d 290 (D.C. Cir. 1946) ............................................................... 7, 14

Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.,
   699 A.2d 482 (1997) ...................................................................................13

Haig v. Agee,
   453 U.S. 280 (1981).....................................................................................19

Huisha-Huisha v. Mayorkas,
   27 F.4th 718 (D.C. Cir. 2022)......................................................................15

L.J. v. Wilbon,
   633 F.3d 297 (4th Cir. 2011) .......................................................................18

Lockington v. Smith,
   15 F. Cas. 758 (C.C.D. Pa. 1817) ..................................................................7

Ludecke v. Watkins,
   335 U.S. 160 (1948)...................................................................................6, 7

Maryland v. King,
   567 U.S. 1301 (2012) ..................................................................................19

Nken v. Holder,
   556 U.S. 418 (2009)................................................................................11, 20

SD 214, LLC v. London Towne Prop. Owners Ass'n,
   395 Md. 424 (2006) .....................................................................................15

*Thomas v. Patriot Square Homeowners' Ass'n, Inc.*,
No. 2189, 2025 WL 427747 (Md. Ct. Spec. App. Feb. 5, 2025) ..................18

*United States ex rel. Von Kleczkowski v. Watkins*,
71 F. Supp. 429 (S.D.N.Y. 1947) ..............................................................16

*United States v. Curtiss Wright Export Corp.*,
299 U.S. 304 (1936) ..................................................................................17

*Wells v. Chevy Chase Bank, F.S.B.*,
363 Md. 232 (2001) ...................................................................................12

**Statutes**

8 U.S.C. § 1158(b)(3)(C) ...............................................................................3

50 U.S.C. § 21 .........................................................................................6, 13

**Regulations**

8 C.F.R. § 208.2(b) ........................................................................................3

8 C.F.R. § 1208.2(b) ......................................................................................3

**INTRODUCTION**

The district court in this case held that the Government had breached the terms of a settlement agreement by removing a class member (known in these proceedings by a pseudonym, "Cristian") under the Alien Enemies Act ("AEA").  To be clear, the district court did not deny that Cristian was properly subject to the AEA and removable under its terms.  Rather, in the district court's view, the settlement entitled Cristian to an adjudication of his pending asylum application before his removal.  On that contractual basis, the district court ordered the Government to "facilitate" Cristian's return to the United States from the custody of El Salvador.  ECF 254.

The Government now respectfully seeks a stay of that order pending appeal.  This Court has held that such a "facilitation" order may be appropriate in some cases.  See Abrego Garcia v. Noem, No. 25-1404, 2025 WL 1135112, at *1 (4th Cir. Apr. 17, 2025). But such a remedy is not appropriate in this case.  Nor do the equities of this case support this constitutionally weighty relief.

First, there was no breach of the settlement.  The settlement resolved disputes over how the Government processes asylum applications in the context of ordinary removals under the Immigration and Nationality Act ("INA"), in Title 8 of the U.S. Code.  That is why it promises that the Government will not, until adjudication of a pending asylum application, execute a "final removal order"—a term of art with specific meaning in immigration removal proceedings under Title 8 and defined in

1

federal regulation 8 C.F.R. § 1241.1—consistent with the parties' overarching goal to rescind a USCIS memo that had only addressed Title 8 removal proceedings. None of that has anything to do with AEA removals under Title 50 of the U.S. Code, which do not involve any "final removal orders" at all, and as to which asylum is not a cognizable defense in any event. Read in context (as it must be), the settlement agreement made no promises about the exercise of the Government's powers under the AEA, and therefore the (otherwise unchallenged) exercise of that AEA power as to Cristian did not violate the agreement. That alone requires a full stay of the order.

Second, after the district court's order, USCIS issued an Indicative Asylum Decision making clear that if Cristian did return to the United States, his application for asylum would be denied on two grounds—his ███ membership in Tren de Aragua ("TdA"), a designated foreign terrorist organization, and his felony conviction for cocaine possession. The district court erred by refusing to grant Rule 60(b) relief in light of that factual development. Respectfully, it is inappropriate and unwarranted to order the Government to facilitate Cristian's return for adjudication of an asylum application that the Government has already addressed through this Indicative Decision. That puts form over substance in a manner that is equally contrary to principles of contract law and propositions of equity. And it does so in a context that is constitutionally fraught because of its implications for sensitive matters of foreign affairs.

2

In these circumstances, the equities also favor a stay. Cristian is not entitled to asylum, and his removal is not otherwise at issue in this litigation or in any habeas proceedings. Forcing the facilitated return of ███████ TdA member and convicted felon, purely as a matter of contractual procedure, would impose serious foreign-policy harms on the Government and threaten the public interest, while doing nothing for Cristian. This Court should therefore grant a stay pending appeal.

## BACKGROUND

**A. The Original Claims.** On July 1, 2019, four named Plaintiffs commenced this litigation to challenge USCIS's policies on Unaccompanied Alien Children ("UACs"), and in particular how USCIS determined whether an applicant was a UAC at the time they filed their asylum application. The lawsuit specifically targeted a policy (embodied in a "2019 Redetermination Memo") under which USCIS would make its own factual determinations as to whether an asylum applicant was still a UAC at the time they filed their asylum application and would defer to the UAC findings of immigration judges for applicants in removal proceedings. Specifically, the 2019 Redetermination Memo addressed the competing jurisdiction of the immigration court under 8 C.F.R. § 208.2(b) and USCIS's initial jurisdiction under 8 U.S.C. § 1158(b)(3)(C), in Title 8 removal proceedings. 2019 Redetermination Memo, ECF 3 at 3; *see* 8 U.S.C. § 1158(b)(3)(C), 8 C.F.R. § 208.2(b), 8 C.F.R. § 1208.2(b).

3

In 2019, the district court issued a preliminary injunction effectively requiring USCIS to accept asylum applications from UACs, and it amended the injunction in 2020 to address new allegations by Plaintiffs relating to processing of these asylum applications. ECF 71 (original PI); ECF 144 (amended PI). In 2021, Plaintiffs filed a second amended complaint challenging further alleged USCIS policies about its processing and adjudication of UACs' asylum applications. ECF 145.

**B. The Settlement Agreement.** The parties subsequently began to negotiate a settlement "with a view to settling all matters in dispute"—*i.e.*, USCIS's policies for determining and exercising its initial jurisdiction over UAC asylum applications, including those in immigration courts in removal proceedings. ECF 199-2 at 3, Section I.I. The agreement expressly defined the "settled claims" as "all claims for relief that were brought in the Action on behalf of Named Plaintiffs and Class Members alleged in Plaintiffs' Complaints." *Id.* at 5, Section II.R. The agreement defined the "class" as:

> all individuals nationwide who prior to the effective date of the superseding memorandum discussed in Section III(A): (1) were determined to be a UAC; and (2) who filed an asylum application that was pending with USCIS; and (3) on the date they filed their asylum application with USCIS, were 18 years of age or older, or had a parent or legal guardian in the United States who is available to provide care and physical custody; and (4) for whom USCIS has not adjudicated the individual's asylum application on the merits.

*Id.* at 4, Section II.E.

4

At its core, the agreement revoked the 2019 Redetermination Memo and instead provided that USCIS would assume initial jurisdiction of most asylum applications filed by individuals previously determined to be UACs, and that DHS would not take the position in removal proceedings that USCIS lacks Initial Jurisdiction over a Class Member's asylum application. *Id.* at 6, Section III.A-B; *id.* at 8, Section III.H. The settlement agreement also included related concessions regarding removal proceeding continuances, EOIR's status docket, and dismissal of removal proceedings. *Id.* It specified that "[t]he terms and conditions set forth in this Agreement constitute the complete and exclusive statement of the agreement between the Parties related to the subject matter of this Agreement." *Id.* at 15, Section VIII.D.

As relevant here, the settlement agreement provided that the Government would not execute a final order of removal against a Class Member with a pending asylum application—or, in other words, would resolve pending asylum applications before completing the removal process under Title 8. Specifically, upon revocation of the 2019 Redetermination Memo, "[w]ith respect to any Class Member with a final removal order, ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement." *Id.* at 8, Section III.I.

5

Consistent with the operative pleadings, nothing in the settlement agreement identified matters in dispute beyond how USCIS determined and exercised initial jurisdiction over the asylum application of a putative UAC, including the competing jurisdiction of the immigration courts in Title 8 removal proceedings, or spoke to anything outside that domain. ECF 199-2, Section I.A.-J (Recitals).

**C. Cristian's Removal Under the AEA.** Cristian is a 20-year-old Venezuelan who illegally entered the United States as a UAC on or around July 4, 2022. ECF 227-3 at 2. He is a class member under the settlement agreement and had filed an asylum application before USCIS on December 20, 2022. *Id.*

On January 7, 2025, Cristian was transferred into ICE custody in Texas following his felony conviction for possession of cocaine. ECF 248-1 ¶¶ 11–12. He was served with a Notice to Appear charging him as inadmissible on two grounds—as an alien present in the United States without being admitted or paroled, and as an alien convicted of a controlled substance offense. *Id.* ¶ 12. That initiated removal proceedings under Title 8.

On March 14, 2025, however, the President issued Proclamation No. 10,903, 90 Fed. Reg. 13,033 (Mar. 20, 2025), invoking the AEA. The AEA grants broad power to remove enemy aliens from the United States. *See* 50 U.S.C. § 21. The Supreme Court has observed that the AEA is "as unlimited" a grant of power "as the legislature could make it." *Ludecke v. Watkins*, 335 U.S. 160, 164 (1948) (quoting

6

*Lockington v. Smith*, 15 F. Cas. 758, 760 (C.C.D. Pa. 1817)). The Court has further explained that the statute touches "matters of political judgment for which judges have neither technical competence nor official responsibility." *Id.* at 170. And the D.C. Circuit has held that this statute confers virtually "[u]nreviewable power in the President to restrain, and to provide for the removal of, alien enemies." *Citizens Protective League v. Clark*, 155 F.2d 290, 294 (D.C. Cir. 1946).

Following the Proclamation, ICE determined that Cristian was subject to the Proclamation as a Venezuelan citizen 14 years of age or older who is a member of TdA. ECF 248-1 ¶ 13. Cristian's membership in TdA was supported by ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████  ECF 269 at 2. Cristian also ███████████████████████ of TdA. *Id.* Accordingly, instead of continuing Title 8 removal proceedings, the Government removed Cristian from the United States under the AEA on March 15, 2025. *Id.* ¶ 14. He is currently in the custody of El Salvador. ECF 227-1 at 5.

**D. The Motion To Enforce.** Approximately one month after the removal, on April 14, 2025, class counsel filed an Emergency Motion to Enforce the Settlement Agreement. ECF 227. The district court granted that motion on April 23.

The district court treated "this case, unlike other cases involving the government's removal of individuals under the AEA," as "a contractual dispute because of the [settlement] Agreement." ECF 253 at 6. And the court held that Cristian's removal violated the settlement agreement because he had a pending asylum application. ECF 253; ECF 254. Ostensibly based on the text of the agreement, the court interpreted the settlement as restricting removals under the AEA, even though removals under that statute involve no "final order of removal" and had played no role in the litigation or settlement as established by the operative pleadings. *See* ECF 253, 254. The Court further reasoned that limiting the protection against removal to only Title 8 would result in the purpose of the Settlement Agreement being "nullified" because "Class Members with pending asylum applications could be summarily removed from the United States and thus rendered ineligible for asylum," although of course that would only be true for the very limited subset of Class Members who are also members of TdA. *Id.* at 10.

By way of remedy, the district court ordered the Government "not to remove from the United States members of the certified 'Class,' defined in Section II.E of the Settlement Agreement," until USCIS adjudicated their asylum applications. The court further ordered the Government to "facilitate Class Member Cristian's return to the United States to await the adjudication of his asylum application on the merits by USCIS under the terms of the Settlement Agreement." ECF 254 at 24.

8

**E. The Indicative Asylum Decision and Rule 60(b) Motion.**  On May 1, 2025, USCIS issued an Indicative Asylum Decision determining that, if Cristian were to return to the United States and thus confer jurisdiction on USCIS to adjudicate his asylum application, "the application for asylum would be DENIED because there is evidence indicating that a mandatory bar to asylum would apply to the applicant and USCIS would not exercise its favorable discretion to grant asylum."  ECF 268-1 at 2–3.

*First*, the Indicative Decision noted that "a mandatory bar to asylum applies to the applicant" because "evidence indicates the applicant would be subject to terrorism-related inadmissibility grounds ["TRIG"] and inadmissible under INA 212(a)(3)(B)(i)(V) [8 U.S.C. § 1182(a)(3)(B)(i)(V)] as an alien who is a member of a designated terrorist organization, namely Tren de Aragua (TdA)."  USCIS based this decision on ██████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████  *Id.* at 3.  In short, ████ ██████████████  and based on reviewed evidence, the applicant would be subject to TRIG" and "would therefore be barred from asylum under INA 208(b)(2)(A)(v) as an alien subject to TRIG."  *Id.*

9

*Second,* USCIS also concluded that it would deny Cristian's asylum application as a matter of discretion because "even if he met the refugee definition, the severity of the negative factors would still weigh against an exercise of discretion to grant asylum." *Id.* at 4. USCIS based this decision on Cristian being a ████ ████████████ of TdA"—a "brutal organization 'that uses murder and torture to achieve its aims.'" *Id.* at 3 (citation omitted). Indeed, USCIS concluded this factor "would weigh so heavily against any favorable exercise of discretion in this case that they would be impossible to be outweighed." *Id.* USCIS also independently relied on Cristian's felony conviction in Texas for possession of cocaine, for which he was sentenced to 120 days confinement. *Id.* at 4.

In light of the Indicative Decision, the Government sought Rule 60(b) relief from the part of the order requiring "facilitation" of Cristian's return for adjudication of his asylum application. ECF 261. That factual development made the order a futile exercise—and thus unjustified as a matter of both contract remedies and the court's equitable discretion. The district court denied the motion at a status hearing on May 6, 2025. ECF 270. But the court agreed to stay its order to allow for the Government to file an appeal and seek relief from this Court. *Id.*

The Government noticed its appeal, ECF 271, and now seeks a stay pending appeal. Appellees oppose this motion and will file an opposition.

10

## ARGUMENT

A stay pending appeal turns on the following four factors: "(1) Whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether [the applicant] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 423 (2009). Those factors all support a stay here, because the Government is likely to succeed on appeal, while forcing the Government to facilitate Cristian's return during the pendency of this appeal would harm both the Government and the public interest while accomplishing *nothing* for Cristian.

## I.    The Government Is Likely To Succeed on the Merits.

The Government is likely to succeed on the merits of its appeal for two basic reasons. *First*, the settlement agreement is not plausibly read as barring removal of class members under the AEA; indeed, such a reading makes no sense for multiple reasons. There was accordingly no breach to remedy. *Second*, the district court's remedy is inequitable in light of USCIS's determination that Cristian's asylum application would necessarily be denied were he to return to U.S. soil. Facilitating an alien's return from foreign custody is a momentous ask, and courts should limit it to cases where it is truly appropriate and unavoidable. This is not such a case.

11

**A.  There was no breach of the settlement agreement.**

Most fundamentally, the Government is very likely to succeed in this appeal because the district court erred in concluding that Cristian's removal under the AEA violated the settlement agreement.  The operative language is in Section III.I, which provides that "ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement."  ECF 199-2 at 9, Section III.I.  And the key question is whether removal under the AEA constitutes "executing" a "final removal order" within the meaning of the settlement agreement.  Under Maryland law, which controls how the settlement agreement is interpreted, "[t]he words employed in the contract are to be given their ordinary and usual meaning, *in light of the context within which they are employed*."  *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 251 (2001) (emphasis added).  Both the context of the litigation which the settlement resolved, and the use of the term "final removal order" in the contract, compel the conclusion that the agreement only speaks to removal under Title 8 as defined in 8 C.F.R. § 1241.1.

*First*, the settlement must be understood in light of the litigation it resolved.  The litigation had nothing to do with the AEA; it was limited to how USCIS made jurisdictional determinations over the asylum applications of UACs.  No pleadings

or orders in this litigation even hint that either party believed that the case involved—
or the settlement covered—anything outside the context of Title 8 removals.

*Second*, both the settlement agreement and the INA make clear that a "final
removal order" is a specific legal document that empowers the Government to
remove an alien under Title 8. Section III.J, in particular, specifies what actions
DHS shall take following a grant of asylum by USCIS to a Class Member with a
"removal order" in Title 8 removal proceedings, and in doing so references "time
and number bars for motions to reopen" and "termination or dismissal of removal
proceedings." *See* ECF 248, 22–25. Those rules and procedural mechanisms appear
in the context of Title 8 removal, *see, e.g.*, 8 U.S.C. § 1229a(c)(7)(C)(i)—but there
are no equivalent procedural mechanisms in the context of removal under the AEA.
*See generally* 50 U.S.C. § 21. Section III.J thus makes clear that "final removal
order" in this agreement has its usual Title 8 meaning. When that phrase reappears
in Section III.I, the operative provision, it must be read to have that same meaning.
*See Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 699 A.2d 482, 498-99
(1997) ("[A]bsent a provision to the contrary, the same words used in different
clauses will be construed to have been used in the same sense."). Simply put,
because the various procedural protections that Section III.J mandates Defendants
give class members with "removal orders" following a grant of asylum by USCIS

13

only exist in the context of removal under Title 8 and not Title 50, it is impossible

for the plain meaning of "removal orders" to extend to Title 50.

The district court instead looked to Section V.D, which governs

noncompliance with the agreement, to support its conclusion that there "is no

limitation on the type of removal" restricted by the agreement.  ECF 253, at 9.  But

the phrase "final removal order" does not appear in Section V.D., and the

Government is not alleged to have violated Section V.D.

*Third*, reading the settlement agreement as restricting AEA removals while

asylum applications are pending makes no sense, because asylum is *not a defense to*

*removal under the AEA*.  Indeed, for an alien subject to AEA removal, asylum is no

longer a form of available relief.  *Citizens Protective League*, 155 F.2d at 294 (noting

common law rule that "alien enemies have no rights, no privileges, unless by the

king's special favor").  Designation as a terrorist, even without invoking the AEA,

has also long been a bar to asylum.  8 U.S.C. § 1182(a)(3)(B)(i).  Accordingly, as a

practical matter, an alien's designation under the AEA due to his membership in a

designated Foreign Terrorist Organization moots any pending asylum application he

may have—and thus removes him from the definition of the Class protected by the

settlement.  It would thus be bizarre to construe the settlement as prohibiting an

alien's removal under the AEA pending adjudication of his asylum application—

denial of that application is pre-ordained and inevitable.  Put another way, a pending

asylum application with USCIS cannot provide any avenue for relief from removal under the AEA. That makes the district court's interpretation of the settlement agreement implausible. *See SD 214, LLC v. London Towne Prop. Owners Ass'n,* 395 Md. 424, 434 (2006) ("contractual provisions ... should be interpreted reasonably and should not be given interpretations leading to unreasonable results").

Despite all of this, the district court held that "[t]he Settlement Agreement does not limit the protection against removal provided in Section III.I to any specific statutory mechanism for removal," extending the protection from execution of "a final removal order" beyond its common usage in Title 8 proceedings to include removal under Title 50. ECF 253 at 9. For the reasons explained, that is untenable: upon considering the history, text, and purpose of the settlement agreement, the clear conclusion is that the agreement used the phrase "final removal order" to refer to final orders of removal in removal proceedings under Title 8.

In short, while Title 8 and Title 50 may both effectuate removal of aliens, they are each distinct and separate statutory mechanisms for doing so, just as Title 42 and the INA constitute different and distinct bases for excluding aliens from the United States. *See generally Huisha-Huisha v. Mayorkas*, 27 F.4th 718 (D.C. Cir. 2022). Not all alien enemies will be subject to removal under Title 8 because the authority under Title 50 extends to aliens regardless of lawful immigration status. Likewise, not all aliens subject to Title 8 will be subject to removal under the AEA—which

15

hinges on discrete findings, such as nationality and age, beyond admissibility or removability as defined in the INA. And for aliens subject to both Title 8 and Title 50 removals, the Executive has discretion in deciding how and whether to proceed under either or both statutes. *See United States ex rel. Von Kleczkowski v. Watkins*, 71 F. Supp. 429, 437 (S.D.N.Y. 1947). And here, since the operative pleadings and injunctions nowhere addressed any removals beyond Title 8, the context in which "final removal orders" is used in the settlement agreement makes clear the parties' meeting of the minds was only as to Title 8. Holding otherwise contravened how contracts in Maryland are interpreted, and the Government is accordingly likely to succeed on the merits of its appeal.

**B.     The Indicative Asylum Decision makes the return order inequitable.**

Moreover, in light of USCIS's Indicative Asylum Decision explaining that Cristian's application for asylum would be denied upon his return, foreclosing his ability to obtain asylum, the Court should at minimum stay the portion of the district court's order requiring facilitation of Cristian's return to the United States. This factual development establishes that even if Cristian were to receive the "process" that the district court viewed as owed to him under the settlement agreement, the result would be the same. In light of the severe constitutional burdens that the district court's facilitation order imposes on the United States—including by interfering

with matters of foreign affairs that Article II of the Constitution vests in the Executive Branch—the court's facilitation order cannot be considered a proper exercise of remedial discretion.

The order directing the Government to facilitate Cristian's return is both constitutionally and practically problematic. Cristian is currently in the custody of a foreign sovereign. *See* ECF 227-1 at 5. The Government lacks the formal power to direct his return. *See* Defs.' Mem. Opp. Prelim. Inj. at 8–9, *J.G.G. et al. v. Trump, et al.*, No. 1:25-cv-766 (D.D.C. May 1, 2025), ECF 108; Declaration of Deputy Secretary of State Christopher Landau at 2, *J.G.G. et al. v. Trump, et al.*, No. 1:25-cv-766 (D.D.C. May 1, 2025), ECF 108-1 ("El Salvador is a sovereign, independent nation, with its own domestic law and international obligations governing the detention of individuals. El Salvador makes its own sovereign decisions, including with respect to detention."); *cf.* ECF 253 at 2 ("[This case] is not a habeas case, or a case assessing the propriety of the government's recent invocation of the Alien Enemies Act.").

Moreover, for the Government to *request* his return would be an act of foreign affairs, an area constitutionally assigned to the Executive Branch, and which courts must be very cautious not to intrude upon. *See, e.g.*, *United States v. Curtiss Wright Export Corp.*, 299 U.S. 304, 320 (1936); *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948); *see also* ECF 253 at 13 ("This Court is mindful of

17

the Supreme Court's reminder to afford the 'deference owed to the Executive Branch in the conduct of foreign affairs.'"). At minimum, these considerations mean that courts should be very careful before imposing such remedial orders.

Here, the constitutional implications of the district court's order to facilitate Cristian's return must be considered in light of the reality that, given Cristian's AEA designation (which he ███████████ and has not challenged here), any process that he claims to be entitled to under the settlement agreement would not result in him receiving asylum or otherwise allow him to remain in the United States. For avoidance of doubt, USCIS has already issued an Indicative Asylum Decision on Cristian's asylum application, determining that he is barred from a grant of asylum and that his application does not warrant an asylum grant in the exercise of discretion based on Cristian's ███████████ in a violent terrorist gang and his felony drug conviction. *See* ECF 268.

As a matter of both contract law and equitable discretion, the facilitation order is inappropriate under these circumstances, and the district court thus abused its discretion by denying Rule 60(b) relief. *See L.J. v. Wilbon*, 633 F.3d 297, 304–05 (4th Cir. 2011); *see also Thomas v. Patriot Square Homeowners' Ass'n, Inc.*, No. 2189, 2025 WL 427747, at *7 (Md. Ct. Spec. App. Feb. 5, 2025) ("At bottom, '[t]he touchstone of substantial compliance is whether the alleged 'notice' was sufficient to fulfill the purpose of the requirement.'"). Compelling Cristian's return when he

18

has already been removed pursuant to the AEA, for the sole purpose of receiving any process he was entitled to under the Settlement Agreement even though it necessarily will not result in any different outcome, cannot be considered equitable in light of the constitutional and practical difficulties at stake.

## II.     The Equities Favor a Stay of This "Facilitation" Order.

The balance of equities under *Nken* also calls for this Court to stay the district court's order. The court's "facilitation" order, in particular, threatens to impose serious harm and burden on the Government, but staying the order would not harm Cristian since this is purely a matter of ostensibly proper contractual procedure that would not impact the end result.

As to the harms to the Government and the public interest, the court's order directly undermines the President's core authority to remove aliens who are linked to TdA. Directing the return of Cristian to the United States for adjudication of his asylum application pursuant to the settlement agreement is an injunction against the President's execution and operation of Title 50, and represents irreparable injury. *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers) (holding the federal government sustains irreparable injury whenever "it is enjoined by a court from effectuating statutes enacted by representatives of the people"). There is also strong public interest in ensuring the safety of the citizens of the United States and protecting them from designated terrorist organizations. *See Haig v. Agee*, 453 U.S.

19

280, 307 (1981) ("It is 'obvious and unarguable' that no governmental interest is more compelling than the security of the Nation."). The President has determined that members of TdA pose a threat to the United States and thus invoked the AEA. Consistent with the Proclamation, ICE has determined Cristian is a TdA member—a determination not challenged by Class Counsel or the court—and falls within the scope of the Proclamation. ECF 248-1. The court's facilitation order thus impairs the strong public interest in ensuring the national security of the country from foreign invasion and terrorist organizations.

On a more practical level, the facilitation order imposes direct burdens on the conduct of the Government's foreign policy. It seeks to interfere with how the United States interacts with a foreign sovereign. Even assuming that in some cases it may be necessary for courts to order relief of this nature, this is certainly a factor to consider as part of the stay calculus, when the Government has shown a likelihood of success on the merits of the appeal.

On the other side of the ledger, there is little private interest now in facilitating Cristian's return—or, put another way, denying a stay will not help Cristian. He has already been removed from the United States, and removal alone is not irreparable injury. *Cf. Nken*, 556 U.S. at 435 ("It is accordingly plain that the burden of removal alone cannot constitute the requisite irreparable injury."). Even if the Government were able to succeed in securing his return—which is far from assured—there is no

dispute here that Cristian has no lawful basis to be in the United States because he has been determined to be a member of the TdA and so is subject to removal under the AEA. And there is no dispute that his asylum application would be both denied and beside the point as it relates to his AEA removal. A stay of the district court's order would thus not impose any irreparable injury on Cristian.

Under these circumstances, the balance of interests strongly militates in favor of a stay, and at minimum against requiring enforcement of the facilitation order pending the Government's appeal.

## CONCLUSION

This Court should stay the district court's order pending appeal.


DATED: May 8, 2025                Respectfully submitted,

                                                      YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

    WILLIAM C. PEACHEY
Director
Office of Immigration Litigation

    YAMILETH G. DAVILA
Assistant Director

    RICHARD G. INGEBRESTEN
Trial Attorney

    */s/Erhan Bedestani*
ERHAN BEDESTANI
Trial Attorney (MN Bar No. 0504824)

21

U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 598-7451
Fax: (202) 305-7000
erhan.bedestani2@usdoj.gov

*Counsel for Defendants-Appellants*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 5,029 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 365 in proportionally spaced 14-point Times New Roman typeface.

/s/ Erhan Bedestani
Erhan Bedestani
Counsel for Appellants

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2025 I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Erhan Bedestani*
Erhan Bedestani
Counsel for Appellants

24