No. 25-1519

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

J.O.P.; M.A.L.C.; M.E.R.E.; K.A.R.C.; E.D.G.; L.M.Z., on behalf of themselves as individuals and on behalf of others similarly situated,

*Plaintiffs-Appellees,*

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; KIKA SCOTT, Senior Official Performing the duties of the Director, U.S. Citizenship & Immigration Services; KRISTI NOEM, Secretary of Homeland Security; U. S. IMMIGRATION & CUSTOMS ENFORCEMENT; TODD LYONS, Acting Director US Immigration and Customs Enforcement,

*Defendants-Appellants.*

Appeal from the United States District Court for the District of Maryland
Case No. 8:19-cv-01944-SAG, Judge Stephanie A. Gallagher

## **APPELLEES' OPPOSITION TO APPELLANTS' MOTION**
## **FOR STAY PENDING APPEAL**

Elaine Herrmann Blais
Kevin J. DeJong
Jesse Lempel
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617-570-1000

Wendy Wylegala
KIDS IN NEED OF DEFENSE
252 West 37th Street, Suite 1500W
New York, NY 10018
Tel.: 646-970-2913

May 12, 2025

*(additional counsel listed on signature block)*

Brian T. Burgess
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
Tel.: 202-346-4000
BBurgess@goodwinlaw.com

Michelle N. Mendez
NATIONAL IMMIGRATION PROJECT
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20036
Tel.: 540-907-1761

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

BACKGROUND ...................................................................................5

I.     This Litigation and the Settlement Agreement..................................5

II.    President Trump's Proclamation and Orders of Removal..............................8

III.   Defendants' Removal of Cristian ....................................................9

IV.   Class Counsel's Motion to Enforce ................................................9

V.    The "Indicative Asylum Decision" and Motion to Vacate...........................10

ARGUMENT ......................................................................................11

I.     Defendants Are Not Likely To Succeed........................................12

      A.    The District Court Correctly Held That Defendants Removed Cristian in Violation of the Agreement. ...........................................12

      B.    The District Court Acted Within Its Discretion in Denying Defendants' Rule 60(b) Motion. .................................................16

II.    None of the Equitable Factors Support Granting a Stay. .............................20

CONCLUSION ....................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Abrego Garcia v. Noem*,
  No. 25-1345, 2025 WL 1021113 (4th Cir. Apr. 7, 2025)..............................4, 21

*Abrego Garcia v. Noem*,
  No. 25-1404, 2025 WL 1135112 (4th Cir. Apr. 17, 2025).................4, 19, 21, 22

*CFPB v. Ocwen Fin. Corp.*,
  30 F.4th 1079 (11th Cir. 2022) ...........................................................14

*Epic Sys. Corp. v. Lewis*,
  584 U.S. 497 (2018).........................................................................16

*Evans v. Jeff D.*,
  475 U.S. 717 (1986).........................................................................22

*G.F.F. v. Trump*,
  2025 WL 1301052 (S.D.N.Y. May 6, 2025) ......................................21

*Johnson v. Cont'l Fin. Co., LLC*,
  131 F.4th 169 (4th Cir. 2025) ..........................................................13

*L.J. v. Wilbon*,
  633 F.3d 297 (4th Cir. 2011) .............................................................3

*Long v. Robinson*,
  432 F.2d 977 (4th Cir. 1970) ...........................................................12

*Nken v. Holder*,
  556 U.S. 418 (2009).........................................................................21

*Noem v. Abrego Garcia*,
  145 S. Ct. 1017 (2025).....................................................................21

*Rufo v. Inmates of Suffolk Cnty. Jail*,
  502 U.S. 367 (1992).........................................................................16

*Scott v. Baltimore County*,
  101 F.4th 336 (4th Cir. 2024) ..........................................................15

*Transamerica Premier Life Ins. Co. v. Selman & Co., LLC*,
   401 F. Supp. 3d 576 (D. Md. 2019) ...................................................................14

*Vitkus v. Blinken*,
   79 F.4th 352 (4th Cir. 2023) ...............................................................................22

*Williams v. Zbaraz*,
   442 U.S. 1309 (1979) (Stevens, J., in chambers) ................................................11

**Statutes**

8 U.S.C. § 1158(a)(1)....................................................................................................7

8 U.S.C. § 1158(b)(3)(C) ..............................................................................................5

8 U.S.C. § 1158(d)(5)(A)(ii) .......................................................................................18

8 U.S.C. § 1229a(a)(3) ................................................................................................16

8 U.S.C. § 1229a(c)(7)................................................................................................15

**Other Authorities**

8 C.F.R. § 208.8(a) ........................................................................................................7

8 C.F.R. § 208.9(b) ......................................................................................................18

## INTRODUCTION

Defendants do not satisfy their burden to justify the extraordinary relief of a stay pending appeal.

After years of hard-fought litigation and extended settlement negotiations, Defendants entered into an agreement with Plaintiffs that established commitments to protect the rights of unaccompanied noncitizen children to pursue asylum claims before U.S. Citizenship and Immigration Services ("USCIS"). To that end, the Agreement provides that USCIS "will exercise Initial Jurisdiction over Class Members' asylum applications…and adjudicate them on the merits." ECF 199-2 at 7, § III.B. And to prevent interference with full adjudication, the Agreement prohibits U.S. Immigration and Customs Enforcement ("ICE") "from executing" any "Class Member's final removal order until USCIS issues a Final Determination"—a critical protection that ensures class members receive a merits decision on asylum rather than being disqualified by removal. *Id.* at 9, § III.I.

The district court (Gallagher, J.), which had reviewed and approved the Agreement just last year, found Defendants in breach for removing a Class Member ("Cristian")[1] despite his still-pending asylum application. The court thus ordered

---

[1] The district court granted Plaintiffs' motion to proceed by pseudonym. ECF 254.

Defendants to remedy their breach by facilitating Cristian's return "to await the adjudication of his asylum application on the merits." ECF 254 at 2.

Defendants appeal from the district court's Order and from a Rule 60(b) order rejecting vacatur. But despite nods to "weighty" issues, Mot. 1, Defendants' arguments are narrow. They acknowledge that "a 'facilitation' order may be appropriate in some cases," *id.*, and never dispute the district court's authority to enter such relief. To the contrary, Defendants recognize this is a "contractual dispute," *id.* at 8, and the Agreement provides the district court with "exclusive jurisdiction" to enforce its terms, ECF 199-2 at 13, § V.A. Defendants also concede that Cristian "is a class member under the settlement agreement," Mot. 6, abandoning their lead argument below. Instead, Defendants contend only that the district court misinterpreted the Agreement, and then argue that the court abused its discretion by denying Rule 60(b) relief. Defendants are not entitled to a stay while pursuing these limited arguments.

First, Defendants are not likely to succeed. The district court correctly recognized that the Agreement does "not limit the protection against removal provided in Section III.I to any specific statutory mechanism for removal." ECF 253 at 9. Rather, it refers to any "final removal order." President Trump's Alien Enemies Act ("AEA") Proclamation expressly orders "removal" and Defendants have represented that such removals are "final." *Id.* Defendants' effort to cabin

Section III.I's protections to "ordinary removals under the Immigration and Nationality Act ('INA')," Mot. 1, seeks "to add language" to the Agreement that is not there. ECF 253 at 8. Moreover, the plain-text interpretation aligns with the broader context underlying the Agreement: that Class Members were seeking to "have their asylum applications adjudicated on the merits by USCIS while they remain in the United States with access to their counsel." *Id.* at 9-10. It cannot reasonably be argued that the parties agreed to allow the Government to remove Class Members with a pending asylum application, so long as the removal was pursuant to the AEA. *Id.*

Defendants fare no better in attacking the district court's Rule 60(b) decision, which is reviewed for abuse of discretion. *See L.J. v. Wilbon*, 633 F.3d 297, 305 (4th Cir. 2011). Rather than comply with the district court's Order, Defendants tried to engage in self-help by issuing an *ultra vires* "Indicative Ruling" advising that USCIS would deny Cristian's asylum application upon his return to the United States. As the district court recognized, Defendants' attempt to "prejudge[] the outcome of [Cristian's] asylum proceeding" is legally baseless. May 6, 2025 Tr. ("Tr.") 30:11-14. The Agreement guarantees Cristian "an adjudication on the merits," and the "Indicative Asylum Decision"—which did not provide Cristian or his counsel with any chance to challenge Defendants' allegations—is not that "on its face." *Id.* 30:8-10.

Second, the equitable factors also overwhelmingly counsel against a stay. The district court's Order goes no further than the "facilitation" relief in *Abrego Garcia v. Noem*, No. 25-1404, 2025 WL 1135112, at *1 (4th Cir. Apr. 17, 2025), in which this Court declined to grant a stay. On the other side of the ledger, Cristian faces irreparable harm "every minute" he remains at CECOT, "'a notorious supermax prison known for widespread human rights violations.'" *Abrego Garcia v. Noem*, No. 25-1345, 2025 WL 1021113, at *1, *6 (4th Cir. Apr. 7, 2025) (Thacker, J., concurring). And the public interest supports holding Defendants to their contractual commitments and requiring them to follow court orders.

Defendants deride the relief afforded to Cristian as a matter of "form over substance," complaining that a facilitation order is overly burdensome when the outcome of Cristian's asylum application (supposedly) is preordained. Mot. 2-3. But as the district court recognized, "process is important." Tr. 30:15. Relying on inadmissible hearsay and without an evidentiary record or an opportunity to be heard, Defendants level serious accusations against Cristian, asserting that he would be ineligible for asylum because he is ▮▮▮▮▮ member of Tren de Aragua ("TdA"). Mot. 9. "Perhaps, but perhaps not." *Abrego Garcia*, 2025 WL 1135112, at *1. Once returned, Cristian could challenge these assertions in a ***genuine*** adjudication on the merits. The rule of law does not let the Government "just…skip to the end." Tr. 31:4-5.

4

The Court should deny the motion to stay paragraph 2 of the district court's Order, the only provision addressed by their application. *See* D.I. 19, 21.

## BACKGROUND

### I.    This Litigation and the Settlement Agreement

For most noncitizens in immigration court proceedings seeking asylum, the immigration court has jurisdiction over their asylum application.  Unaccompanied alien children ("UAC"), however, are entitled to have their asylum applications decided through a non-adversarial interview by USCIS.  8 U.S.C. § 1158(b)(3)(C). Under the "2013 Kim Memo," USCIS policy was to exercise initial jurisdiction over any asylum application filed by a noncitizen determined by federal immigration authorities to be an unaccompanied child, provided that determination had not been rescinded before the noncitizen filed the application, and even if the applicant had reached age 18 or reunited with a parent or legal guardian before filing the asylum application.  ECF 3-4.

USCIS's 2019 Redetermination Memo restricted the group of young asylum seekers who would benefit from these statutory protections.  ECF 3.  In 2019, four named plaintiffs commenced litigation, alleging that the policy changes reflected in the 2019 Redetermination Memo were adopted in violation of the Administrative Procedure Act, the INA, and the Due Process Clause.  ECF 1.  The district court enjoined the policy, entering a temporary restraining order and a preliminary

injunction.  ECF 54, 55, 60, 63, 66, 71, 144.  The court also certified a class.  ECF 144.  Plaintiffs amended their complaint twice to address new issues that came to light regarding Defendants' subversion of their process rights.  ECF 91, 146.

In 2024, after years of negotiations, the parties reached a final settlement that provided relief to the certified class of young asylum seekers previously determined to be unaccompanied children.  ECF 199-2.  On November 25, 2024—just five months ago—the district court granted final approval of the settlement.  ECF 205.

The Agreement defines the Class as follows:

> All individuals nationwide who prior to the effective date of the superseding memorandum discussed in Section III(A) of the Settlement Agreement:[2] (1) were determined to be a UAC; and (2) who filed an asylum application that was pending with USCIS; and (3) on the date they filed their asylum application with USCIS, were 18 years of age or older, or had a parent or legal guardian in the United States who is available to provide care and physical custody; and (4) for whom USCIS has not adjudicated the individual's asylum application on the merits.

*Id.* ¶ 2; ECF 199-2 at 5, § II.E.

Under the Agreement, USCIS must "exercise Initial Jurisdiction over Class Members' asylum applications in accordance with the terms of this Settlement Agreement and adjudicate them on the merits."  ECF 199-2 at 7, § III.B.  The Agreement defines "adjudicate on the merits" as "to render a decision on the

---

[2] On Feb. 24, 2025, USCIS issued the superseding memorandum.  ECF 199-2 at 7; ECF 227-2, Ex. 7.

substance of an asylum claim by either granting an approval or issuing a determination of non-eligibility." *Id.* at 4, § II.B.

Other Agreement provisions bar actions by Defendants that would undercut USCIS's merits adjudication. *See, e.g.*, ECF 199-2 at 9, § III.H. Most relevant here, the Agreement provides that, "[w]ith respect to any Class Member with a final removal order, ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement." *Id.* at 9, § III.I. The clause includes two defined terms, "Class Member" and "Final Determination," but "final removal order" is not defined. *Id.* at 4-7, § II. Further, the Agreement provides that if a "motion to enforce is initiated, the complaining Class Member shall not be removed from the United States unless and until the matter has been resolved in favor of Defendants." *Id.* at 14, § V.D.

The Agreement's prohibition on removal is crucial because the right to seek asylum is only afforded to a noncitizen "physically present in the United States or who arrives in the United States." 8 U.S.C. § 1158(a)(1). An asylum application is deemed abandoned upon departure from the United States since USCIS cannot grant asylum to someone outside the country. 8 C.F.R. § 208.8(a); ECF 227-2, Ex. 2.

## II.     President Trump's Proclamation and Orders of Removal

In March 2025, President Trump issued a Proclamation invoking the AEA. ECF 227-2, Ex. 3.  Section 1 directs that "Venezuelan citizens 14 years of age or older who are members of TdA, are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies."  Section 3 provides that "all Alien Enemies described in section 1…are subject to immediate apprehension, detention, and removal."  The Proclamation orders the Attorney General and the Secretary of Homeland Security "to cause the apprehension, detention, and removal of all members of TdA who otherwise qualify as Alien Enemies under section 1."  *Id.* § 6.  As reflected in publicly available guidance, removals are effectuated under a "Notice and Warrant of Apprehension and Removal Under the Alien Enemies Act."[3]

On March 15, 2025, ICE removed many Venezuelans to El Salvador pursuant to the Proclamation.  ECF 227-2, Ex. 4 ¶¶ 5-6.

---

[3]    Guidance for Implementing the Alien Enemies Act (Mar. 14, 2025), www.documentcloud.org/documents/25915967-doj-march-14-memo-alien-enemies-act/#document/p1.

## III.  Defendants' Removal of Cristian

Cristian is a Class Member from Venezuela.  ECF 227-3 ¶ 5.  After Cristian entered the United States, he was determined by federal immigration officials to be a UAC.  *Id.* ¶ 5.  In December 2022, when he was 18 years old, Cristian filed an asylum application with USCIS.  *Id.* ¶ 6.  Cristian's asylum application remains pending with USCIS, and he has yet to be scheduled for an interview.  *Id.*  Cristian was in the group of Venezuelans removed to El Salvador on March 15, 2025 under the President's Proclamation.  ECF 227-2, Ex. 6.   He has remained incarcerated in El Salvador at CECOT since.  Mot. 7, 17.

## IV.  Class Counsel's Motion to Enforce

On April 14, 2025, after weeks of delays to meet and confer by Defendants, Class Counsel filed an emergency motion to enforce the Agreement, asserting that Cristian was removed to El Salvador in violation of the Agreement.  ECF 227-1. Defendants argued the court lacked jurisdiction because the claim "sound[s] in habeas," ECF 248 at 9-11, a position they have abandoned.  Defendants also asserted that Cristian did not meet the Class Definition, another position since dropped.  *Id.* at 12-17.  Alternatively, Defendants asserted that the removal clause only prohibits removals under Title 8, not under Title 50 (*i.e.*, the AEA).  *Id.* at 17-21.

On April 23, 2025, the district court granted Plaintiffs' motion.  ECF 254. Relevant to the issues still pressed by Defendants, the district court rejected their

attempt to narrow the removal clause in Section III.I to allow for removals under Title 50. ECF 253 at 8-11. The court stated that "Defendants attempt to add language to the Settlement Agreement that does not comport with the Agreement's plain terms," which "does not limit the protection against removal…to any specific statutory mechanism for removal." *Id.* at 8-9.

The Order instructed Defendants "not to remove from the United States members of the certified 'Class.'" ECF 254 ¶ 1. Defendants were also ordered "to facilitate Class Member Cristian's return to the United States to await the adjudication of his asylum application on the merits by USCIS under the terms of the Settlement Agreement." *Id.* ¶ 2.

## V.    The "Indicative Asylum Decision" and Motion to Vacate

Despite the Order and without immediately seeking a stay, Defendants took "no[]…steps" to facilitate Cristian's return to the United States. Tr. 6:4-8. Rather, nearly two weeks later, on May 4, 2025, Defendants filed a motion to vacate the portion of the Order directing them to facilitate Cristian's return. ECF 261.

Defendants attached a 1.5 page "Indicative Asylum Decision," which stated that, if Cristian is returned to the United States, "the application for asylum would be DENIED because there is evidence indicating that a bar to asylum would apply to the applicant and USCIS would not exercise its favorable discretion to grant asylum." ECF 268-1. Defendants asserted that the Order should be vacated under

10

Fed. R. Civ. P. 60(b) because it was no longer "equitable" to facilitate Cristian's return in view of the Indicative Decision. ECF 267 at 10-14.

The court convened a status conference on May 6, 2025 and denied the motion to vacate. ECF 270. The court determined there was no "equitable reason" to alter the court's judgment. Tr. 29:19. As the court stated:

> I don't think that this is a case about whether or not Cristian is going to eventually get asylum….The issue is, and has always been, one of process, whether he has received the process that the class bargained for when the Settlement Agreement was entered.
>
> For all of the reasons that [Class Counsel] just reviewed with us, he has not received an adjudication on the merits via this Indicative Asylum Decision which on its face indicates that it's not a ruling on the merits. The indicative ruling essentially prejudges the outcome of the asylum proceeding with no ability for Cristian or his legal representatives to provide any input into the process, and it's not a substitute for the process that was due.

Tr. 30:1-15.

Defendants noticed their appeal on May 7 and filed a motion for stay pending appeal the next day.

## ARGUMENT

A stay pending appeal is "extraordinary relief." *Williams v. Zbaraz*, 442 U.S. 1309, 1316 (1979) (Stevens, J., in chambers). A party seeking a stay must show (1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the

11

stay. *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970). The government has not shown that any of these factors warrant a stay.

## I. Defendants Are Not Likely To Succeed.

### A. The District Court Correctly Held That Defendants Removed Cristian in Violation of the Agreement.

The Agreement prohibits ICE from executing a "final removal order" if a Class Member has a pending asylum application, which USCIS has not adjudicated on the merits. Defendants' attempt to rewrite the Agreement to limit "final removal order" to Title 8 removal orders—thus allowing the Government to remove unaccompanied children with pending asylum applications through other orders— should be rejected.

Because "final removal order" is not defined—unlike several other terms, ECF 199-2 at 4-7, § II—its ordinary meaning controls. *See* ECF 253 at 8-9. The term refers to any final order to remove a Class Member. The removal of Cristian pursuant to the President's AEA Proclamation fits that ordinary meaning. The Proclamation directs the "removal" of designated individuals, using variations of "remove" 11 times. ECF 227-2, Ex. 3. And, as noted, p. 2, Defendants have represented that removals undertaken pursuant to the Proclamation are "final." Defendants' conclusory assertion that AEA removals "do not involve any 'final removal orders' at all," Mot. 2, is baffling. Individuals are being removed from the country based on a final order from the President, and a "Notice and Warrant of

12

Apprehension And Removal." *See* Guidance, *supra* n.3, at 8. What else could be the asserted legal basis for their removal?

As the district court recognized, ECF 253 at 9, the ordinary meaning is further supported by the Agreement's structure. Section V.D works with Section III.I. It addresses instances in which a class member challenges Defendants' compliance, specifying that once "a motion to enforce is initiated, the complaining Class Member shall not be removed from the United States unless and until the matter has been resolved in favor of Defendants." ECF 199-2 at 14, § V.D. This section, like Section III.I, unambiguously prohibits ***all removals*** without qualification.

Defendants try to brush off Section V.D as inapplicable, Mot. 14, but the provisions work together. Section III.I prohibits Defendants from removing Class Members with pending asylum applications, since removal would defeat their procedural right to a merits adjudication. And Section V.D provides that, where there is a dispute over whether a Class Member has received the procedural rights afforded by the Agreement, that Class Member "shall not be removed" until the dispute is resolved, preserving a meaningful remedy. ECF 199-2 at 14. It would make no sense to read these two provisions as covering different removal categories. "Under Maryland law, courts construe the contract as a whole and decline to read each clause or provision separately." *Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 179 (4th Cir. 2025) (cleaned up).

13

Unable to overcome the Agreement's plain meaning, Defendants try to insert words in the Agreement, rewriting "final removal order" as "final orders of removal in removal proceedings under Title 8." Mot 12-16. But under Maryland law, "a court will not 'add or delete words to achieve a meaning not otherwise evident from a fair reading of the language used.'" *Transamerica Premier Life Ins. Co. v. Selman & Co., LLC*, 401 F. Supp. 3d 576, 593 (D. Md. 2019). The Agreement does not limit "final removal order" to any subset of removal orders issued under a particular authority, and the Agreement is "the complete and exclusive statement of its terms." ECF 199-2 at 15, § VIII.D.

Defendants nonetheless insist that "the settlement must be understood in light of the litigation it resolved," which "had nothing to do with the AEA." Mot. 12-13. Defendants cite no precedent for this interpretive theory, ignoring that settlement terms may extend beyond the litigation giving rise to the agreement. *See, e.g.*, *CFPB v. Ocwen Fin. Corp.*, 30 F.4th 1079, 1084 (11th Cir. 2022) (collecting decisions holding that the settlement terms control, including where "the parties' settlement agreement covered more ground than the original complaint"). They also skip past the Agreement's prohibition on using any "extrinsic evidence whatsoever" to aid interpretation. ECF 199-2 at 15, § VIII.D.

But even taken on its own terms, Defendants' argument construes context too narrowly. Plaintiffs filed suit to stop Defendants' efforts to undermine the

14

procedural rights of unaccompanied children to receive merits adjudications of their asylum applications before USCIS.  ECF 1 ¶ 11.  And they twice amended their Complaint when new government efforts to defeat process rights came to light.  ECF 91, 146.  In entering into the Agreement, Plaintiffs bargained for a general prohibition against removal while a Class Member's asylum application is pending as a "core protection[]."  ECF 253.  The broad language used prohibits any effort at evasion through removal.  *Cf. Scott v. Baltimore County*, 101 F.4th 336, 350 (4th Cir. 2024) ("that a statute can be applied in situations not expressly anticipated… does not demonstrate ambiguity.  It demonstrates breadth." (cleaned up)).

Turning belatedly to the Agreement's text, Defendants argue, Mot. 13-14, that the reference to "removal order" in Section III.J supports their restrictive reading. But that provision addresses a procedural mechanism for a narrow subset of Class Members who have received both a grant of asylum from USCIS and an order of removal from an immigration judge.  Section III.J requires DHS to facilitate a full grant of relief to such individuals who need to reopen immigration court orders to pursue other rights, such as adjustment of status and potentially citizenship.  *See* 8 U.S.C. § 1229a(c)(7) (motions to reopen).  There is no basis for reading Section III.J's targeted relief to narrow the scope of Section III.I's general restriction.

Finally, Defendants assert that the Agreement should be read to exclude AEA removals because asylum supposedly is "not a defense to removal under the AEA."

Mot. 14-15.  But the cases Defendants cite do not support this sweeping and radical assertion, which contradicts the general rule that where federal statutes "touch[] on the same topic," courts must "strive to give effect to both." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 498 (2018).  The INA, which postdates the AEA, provides the "sole and exclusive procedure" for adjudicating removal from the United States, inclusive of the opportunity to seek asylum.  *See* 8 U.S.C. § 1229a(a)(3).  But this Court need not and should not address such broad legal questions here.  The point is merely that Defendants' "practical" argument, Mot. 14, relies on questionable legal premises, which cannot justify departing from the Agreement's plain text, and further undermines Defendants' claim of likelihood of success on the merits.

### B.    The District Court Acted Within Its Discretion in Denying Defendants' Rule 60(b) Motion.

Defendants also are not likely to succeed in their argument that the district court abused its discretion by denying their Rule 60(b) motion.  A party seeking to modify a decree under Rule 60(b)(5) bears the "burden of establishing that a significant change in circumstances warrants revision of the decree."  *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992).  This burden is only met "by showing either a significant change either in factual conditions or in law" that makes "enforcement of the decree…detrimental to the public interest."  *Id.* at 384.

The district court acted within its discretion when denying the government's motion to vacate.  As purported changed "factual conditions," Defendants rely on

16

their own action in response to the district court's original Order: Defendant USCIS's "Indicative Asylum Decision." This litigation-driven "decision" is not a changed factual condition; it is merely a repackaging of the arguments Defendants raised in opposition to the motion to enforce contesting Cristian's eligibility for asylum, *see* ECF 248 at 14, but now placed under USCIS letterhead. Defendants identify no USCIS regulation, policy, or practice providing for "indicative" rulings—such a practice appears nowhere in the agency's 271-page procedural manual,[4] but rather it appears to have been created just for this case. The district court acted within its discretion in concluding that this litigation contrivance did not relieve Defendants from their obligation to comply with the court's Order.

As the district court recognized, Tr. 30:7-14, USCIS's "indicative" statement does not bring Defendants into compliance with the Agreement because it does not provide Cristian with the "adjudication on the merits" on "the substance" of his asylum application to which he is entitled. *See* ECF 199-2 at 8-9, § III.I (providing a Class Member with a right to a "Final Determination" of his asylum application before removal); *id.* at 4, § II.L (defining "Final Determination" to require, as relevant here, "an adjudication on the merits"); *id.* at 3, § II.B (defining a merits adjudication as requiring a decision "on the substance of an asylum claim").

---

[4] *See* Affirmative Asylum Procedures Manual (Feb. 2025) ("Asylum Manual"), www.uscis.gov/sites/default/files/document/guides/AAPM.pdf.

USCIS's so-called indicative ruling is not a substantive merits adjudication "on its face." Tr. 30:9. Indeed, the 1.5 page USCIS document admits that the agency **cannot** adjudicate the merits of Cristian's application while he is outside the country. *See* ECF 268-1 at 2 (stating that the "indicative decision below is based on evidence in the record **if we were** to obtain jurisdiction of the case and adjudicate" (emphases added)); *see also* ECF 248 at 13.

Defendants nonetheless contend that the district court abused its "remedial discretion" by ordering compliance. Mot. 16-17. In their view, denial of Cristian's asylum application is preordained, so the Executive should not be put to the trouble of facilitating his return for a proper adjudicative process. *Id.* at 17-19. But "[p]rocess is important"—it is what the Settlement Agreement (and the litigation giving rise to it) are all about. Tr. 30:15. Defendants' insistence that they should "just get to skip to the end," *id.* 31:5, disregards that process shapes outcome and provides a better vehicle to arrive at the truth.

In a USCIS merits adjudication, an asylum applicant has a right to testify and to provide other supporting testimony and documentary evidence to establish asylum eligibility and counter any putative bars. *See, e.g.*, 8 U.S.C. § 1158(d)(5)(A)(ii); 8 C.F.R. § 208.9(b); Asylum Manual § II.J. Moreover, under the Agreement, Cristian is entitled to a non-adversarial asylum interview, a critical part of the adjudicative process. *See* 8 CFR § 208.9(b); *see also* Asylum Manual § II.J (describing the non-

18

adversarial interview process).  These processes would, among other things, provide

Cristian with a chance to counter Defendants' allegations of ███████ TdA

membership, which Defendants support here with non-record hearsay ███

███████████████████████████████████████."  Mot. 7, 9.  By contrast, USCIS provided

Cristian no procedural rights before issuing the *in absentia* indicative statement.[5]

Defendants' "skip to the end" position here, Tr. 31:5, echoes the

Government's arguments in *Abrego Garcia*, where it likewise insisted it should not

be compelled to facilitate the return of an individual whom the Executive asserts "is

a terrorist" and a gang member.  2025 WL 1135112, at *1.  This Court rejected that

argument, explaining that Abrego Garcia "is still entitled to due process" to contest

the Government's assertion, and that "[i]f the government is confident of its position,

it should be assured that position will prevail in proceedings" following his return.

*Id.*  So too here.  Defendants breached their commitment to Cristian by removing

him without providing the merits adjudication required by the Agreement.  The

district court did not abuse its discretion by denying Defendants' Rule 60(b) motion

---

[5] Defendants assert, Mot. 20-21, that there is "no dispute" Cristian "has no lawful basis to be in the United States" and that his asylum application would be denied. They misunderstand the nature of the class claims.  Plaintiffs' motion to enforce sought to guarantee Cristian's bargained-for procedural rights so that he (and his individual immigration counsel) ***can contest*** those assertions in the proper forum. Class Counsel's acknowledgement that those issues need not be resolved in this case is ***not*** a concession that Defendants' allegations are correct.

19

and instead ordering Defendants to "make what was wrong, right," *id.*, by facilitating

Cristian's return and providing him with the process he is due.

## II.   None of the Equitable Factors Support Granting a Stay.

Defendants also fail to satisfy their burden to show that any of the other stay

factors support emergency relief.

To start, Defendants put forward only a cursory argument on irreparable harm,

asserting that the Order "represents irreparable injury" because it is "an injunction

against the President's execution and operation of Title 50." Mot. 19.  Not so.  The

Order does not enjoin Defendants from enforcing any statute, nor does it prohibit

them from removing Cristian (or any other Class Member) after the requisite

process.  Defendants' interest in protecting the safety of U.S. citizens, *id.* at 19-20,

is also not implicated.  Defendants "have provided no evidence, or even any specific

allegations, as to how Cristian…poses a threat to public safety." ECF 253 at 11.  But

if they could substantiate their putative concerns, nothing in the Order prevents them

from detaining Cristian pending adjudication of his asylum application upon his

return to the United States.

The only other interest Defendants identify is their assertion, Mot. 20, that

"the facilitation order imposes direct burdens on the conduct of the Government's

foreign policy."  Defendants contend this consideration should be "part of the stay

calculus," *id.*, but never argue that it rises to the level of irreparable harm.  "Perhaps

for good reason—the Government is not irreparably harmed by facilitating and effectuating the return of a person within its control who was wrongfully removed from the United States." *Abrego Garcia*, 2025 WL 1021113, at *5 (Thacker, J., concurring). Both this Court and the Supreme Court have endorsed virtually identical orders requiring the Government to "facilitate" a noncitizen's return from the same prison in El Salvador. *See Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025); *Abrego Garcia*, 2025 WL 1135112, at *1.

On the other side, a stay would cause Cristian substantial harm. Defendants' assertion, Mot. 20, that "there is little private interest now in facilitating Cristian's return" is astonishing. Even in ordinary cases, "removal is a serious burden" for many noncitizens. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Here, the situation is anything but ordinary: for two months, Cristian has been consigned to a "notorious supermax prison known for widespread human rights violations." *Abrego Garcia*, 2025 WL 1021113, at *1 (Thacker, J., concurring) (citation omitted); *see also G.F.F. v. Trump*, 2025 WL 1301052, at *11 (S.D.N.Y. May 6, 2025).

Defendants brush off the ongoing harm to Cristian by asserting that "there is no dispute here that Cristian has no lawful basis to be in the United States" and that his "asylum application" "is beside the point." Mot. 21. But as discussed, that *is* disputed, and the Agreement provides Cristian with a right to prove his case and pursue his asylum claim in a genuine merits adjudication. In any event, as the district

21

court recognized, predicting whether Cristian "is going to eventually get asylum" is "the wrong yardstick." Tr. 30:1-3. Rather, "[t]he issue is, and has always been, one of process, whether he has received the process that the class bargained for when the Settlement Agreement was entered." *Id.* 30:4-6. Continuing to deprive Cristian of that process and consigning him to a dangerous foreign prison for the duration of this appeal causes him grievous harm.

Finally, the public interest also strongly counsels against a stay. "[T]he public 'undoubtedly has an interest in seeing its governmental institutions follow the law.'" *Vitkus v. Blinken*, 79 F.4th 352, 368 (4th Cir. 2023). And where the Government has overstepped, the public interest lies in "mak[ing] what was wrong, right." *Abrego Garcia*, 2025 WL 1135112, at *1. The public also has a considerable interest in the effective enforcement of settlement agreements. *See, e.g.*, *Evans v. Jeff D.*, 475 U.S. 717, 732-33 (1986). And although there is undoubtedly a "strong public interest" in public safety, Mot. 19-20, as discussed, a stay would not further that interest. The district court's Order requires Defendants to facilitate Cristian's **return**, not to grant his **release**.

## CONCLUSION

The Court should deny the stay motion.

Dated: May 12, 2025

Respectfully submitted,

*/s/ Brian T. Burgess*

Elaine Herrmann Blais
Kevin J. DeJong
Jesse Lempel
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617-570-1000

Brian T. Burgess
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Tel.: 202-346-4000
BBurgess@goodwinlaw.com

Wendy Wylegala
Kids in Need of Defense
252 West 37th Street, Suite 1500W
New York, NY 10018
Tel.: 646-970-2913

Michelle N. Mendez
National Immigration Project
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20036
Tel.: 540-907-1761

Rebecca Scholtz
National Immigration Project
30 S. 10th Street (c/o University of St. Thomas Legal Services Clinic)
Minneapolis, MN 55403
Tel.: 202-742-4423

Mary Tanagho Ross
Bet Tzedek Legal Services
3250 Wilshire Blvd., #1300
Los Angeles, CA 90010
Phone: 323-939-0506

*Counsel for Plaintiffs-Appellees*

Kristen Jackson
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel.: 213-385-2977

May 12, 2025

23

## CERTIFICATE OF COMPLIANCE

This motion complies with the type volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5190 words, excluding the parts exempted by Rule 32(f).

This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-scale requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word 2016 in 14-point Times New Roman, a proportionally spaced typeface.

May 12, 2025                         /s/ *Brian T. Burgess*
                                     Brian T. Burgess