UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| J.O.P, *et al.*, | : | |
| | : | |
| Appellees, | : | |
| | : | |
| v. | : | No. 25-1519 |
| | : | |
| U.S. Department of Homeland Security, *et al.* | : | |
| | : | |
| Appellants. | : | |

**APPELLANTS' REPLY IN SUPPORT OF THEIR MOTION FOR STAY PENDING APPEAL**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

I. The District Court Misread the Settlement Agreement ..... 2

II. "Facilitating" Return in These Circumstances Is Inequitable ..... 6

III. The Balance of Equities Favors a Stay Pending Appeal ..... 8

CONCLUSION ..... 9

# TABLE OF AUTHORITIES

**Cases**

*Credible Behavioral Health, Inc. v. Johnson*,
466 Md. 380 (2019) .......... 2

*Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*,
699 A.2d 482 (Md. Ct. Sp. App. 1997) .......... 4, 5

*J.A.V. v. Trump*,
No. 1:25-CV-072, 2025 WL 1257450 (S.D. Tex. May 1, 2025) .......... 3

*L.J. v. Wilbon*,
633 F.3d 297 (4th Cir. 2011) .......... 7

*Middlebrook Tech, LLC v. Moore*,
157 Md. App. 40 (2004) .......... 6

*Trump v. J. G. G.*,
145 S. Ct. 1003 (2025) .......... 6

*United States v. Curtiss-Wright Export Corp.*,
299 U.S. 304 (1936) .......... 7

*Wells v. Chevy Chase Bank, F.S.B.*,
363 Md. 232 (2001) .......... 2

**Statutes**

8 U.S.C. § 1158(b)(3)(C) .......... 3

50 U.S.C. § 21 .......... 5

**Regulations**

8 C.F.R. § 208.2(b) .......... 3

## INTRODUCTION

Class Counsel maintains that, in restricting the Government from executing a "final removal order" for a class member before adjudicating that person's pending asylum application, the settlement agreement meant to encompass removals under the Alien Enemies Act (AEA) too. Class Counsel is mistaken. The text, context, history, and purpose of the settlement agreement all confirm that the parties were addressing ordinary removals under the Immigration and Nationality Act (INA). The Government is therefore likely to prevail on appeal in showing that it did not breach the settlement agreement by removing Cristian under the AEA.

But even if that removal did constitute a breach, Class Counsel cannot justify the district court's remedy—ordering the Government to facilitate Cristian's return from foreign custody so that USCIS can adjudicate his asylum application, even though Cristian is categorically ineligible for asylum as an [REDACTED] member of Tren de Aragua (TdA), and even though USCIS has already made clear that it would deny asylum as a matter of discretion based on [REDACTED]. Facilitation orders should remain reserved for extraordinary cases; this is not one of them.

Given the weakness of Class Counsel's contract claim, the constitutionally fraught nature of this remedy, and the non-existent prospect of asylum for Cristian, this Court should replace its administrative stay with a full stay pending appeal, at least for paragraph two of the district court's order.

## I. The District Court Misread the Settlement Agreement

The parties agree that Section III.I of the settlement agreement only prohibits execution of a "final removal order." Dkt 24 at 12. The dispute is over what that phrase encompasses. As the Government has explained, "final removal order" is a legal term of art that refers to removal orders under the INA (Title 8), and does not speak to the President's distinct power under the AEA (Title 50). The text and context of the settlement agreement foreclose a reading that applies to removals outside of Title 8. Such an overreading would also result in absurd and unreasonable outcomes. The Government is thus likely to succeed on appeal.

The phrase "final removal order" must be read in light of the context in which it appears. *See Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 251 (2001). After all, courts do not interpret contractual language in a vacuum, but rather "in context, which includes not only the text of the entire contract but also the contract's character, purpose, and the facts and circumstances of the parties at the time of execution." *Credible Behavioral Health, Inc. v. Johnson*, 466 Md. 380, 394 (2019). Here, the context of the settlement agreement was "with a view to settling all maters in dispute." ECF 199-2 at 4. Those matters in dispute are set forth in the Second Amended Complaint, ECF 145, the Government's answer, ECF 151, and the recitals of the settlement agreement, ECF 199-2 at 2-4. The pleadings and orders from the litigation make perfectly clear the parties' "disputes" revolved around Plaintiffs'

challenge to the 2019 Memo, which addressed the competing jurisdiction of the immigration court under 8 C.F.R. § 208.2(b) and USCIS's initial jurisdiction under 8 U.S.C. § 1158(b)(3)(C)—*all in Title 8 removal proceedings*. That is the scope of the litigation resolved by the settlement agreement—no other authority to remove class members was challenged or resolved or put at issue. [1]

The AEA is entirely different source of removal authority. Courts in granting injunctive relief against removal pursuant to the AEA have specifically noted that the scope of the injunctions does not touch on execution of a removal order pursuant to Title 8. *See, e.g.*, *J.A.V. v. Trump*, No. 1:25-CV-072, 2025 WL 1257450, at *20 (S.D. Tex. May 1, 2025) ("In addition, the conclusions of the Court do not affect Respondents' ability to continue removal proceedings or enforcement of any final orders of removal issued against … any member of the certified class, under the Immigration and Nationality Act."). The point here is the inverse—that when the settlement agreement restricted final orders of removal under the INA, that did not somehow silently extend to removals under the authority of the AEA.

Because the term "final removal order" is undefined in the agreement, Class Counsel argues that it encompasses *any* order that results in removal—including not

[1] Indeed, the district court would have lacked jurisdiction to hear a challenge to removal under the AEA as part of the original lawsuit because challenges to removal under the AEA may only be brought in habeas. *Trump v. J. G. G.*, 145 S. Ct. 1003, 1005 (2025).

just the AEA but also removal under Title 42 (public health) or Title 18 (extradition). *See* April 22, 2025 Tr. 43:12-13. But such an all-encompassing reading loses sight of the limited and specific context in which this settlement agreement arose.

To be sure, settlement agreements are capable of going beyond the original scope of the litigation, if the parties so intend. Opp. 14. But there is simply no basis to conclude that the parties here so intended. To the contrary, the settlement makes clear it was designed "with a view to settling all maters in dispute," ECF 199-2 at 4—and nothing more. No extrinsic evidence is needed to recognize that no party contemplated the AEA or thought it had any bearing on the case or settlement.

Class Counsel points to Section V.D of the settlement to support a broader reading of "final removal order," but that argument fails. Section V.D is a dispute resolution mechanism; it specifies that if "a motion to enforce is initiated, the complaining Class Member shall not be removed from the United States unless and until the matter has been resolved in favor of Defendants." ECF 199-2 at 14. Class Counsel argues that the use of the phrase "removed" (without qualification) suggests that *any* sort of removal is barred—and then tries to import that broad interpretation of removal into Section III.I. *See* Opp. 13. That logic has things backwards. The term "removal" must be interpreted consistently across the agreement. *See Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 699 A.2d 482, 498-99 (Md. Ct. Sp. App. 1997). That means Section V.D's reference should be construed in light of the

more specific language that preceded it—not that the term of art "final removal order" should be stripped of its specific meaning.

The far more compelling inference comes from Section III.J, the only other place in Section III where the term "removal orders" appears. ECF 199-2 at 10. Class Counsel objects that Section III.J only "addresses a procedure mechanism for a narrow subset of Class Members who have received both a grant of asylum from USCIS *and an order of removal from an immigration judge*." Opp. 15 (emphasis added). The concession that "removal order" in III.J only extends to "an order of removal from an immigration judge" is conclusive. Under Maryland contract law, "absent a provision to the contrary, the same words used in different clauses will be construed to have been used in the same sense." *Empire Fire & Marine*, 699 A.2d at 498-99. If "removal order" in III.J means "an order from removal from an immigration judge," then "removal order" in III.I must mean the same thing.

Finally, while Class Counsel suggests that allowing AEA removals to proceed before asylum applications are adjudicated would defeat the purpose of the settlement, *see* Opp. 15–16, the opposite is true. An alien enemy designated as such under the AEA cannot seek asylum. *See* 50 U.S.C. § 21 (specifying "naturalization" as the only exemption to the scope of those eligible for removal as alien enemies). So there is no reason why an asylum application would need to be adjudicated before an AEA removal (as opposed to an INA removal). Put another way, Class Counsel's

interpretation of the agreement would prevent the removal of alien terrorists under one statutory authority (Title 50), for the sole purpose of processing an application for relief against removal under a different statutory authority (Title 8). Ordinary rules of contract interpretation militate against that absurd, pointless outcome. *See Middlebrook Tech, LLC v. Moore*, 157 Md. App. 40, 66 (2004).

## II. "Facilitating" Return in These Circumstances Is Inequitable

Even assuming that Cristian's removal violated the settlement, the district court's remedy is inappropriate here. A member of TdA is legally ineligible for asylum, and Class Counsel does not contest Cristian's [redacted] TdA membership here (nor could they, since this is not a habeas action, *see Trump v. J. G. G.*, 145 S. Ct. 1003, 1005 (2025)).[2] The goals of the settlement are not furthered by directing the Government to facilitate Cristian's return—an order that, to say the least, is difficult to effectuate and implicates constitutional sensitivity—simply so his asylum application can be formally denied in a ruling that is entirely pre-ordained.

Class Counsel responds the issuance of the Indicative Asylum Decision is an attempt to "engage in self-help" that "does not bring Defendants into compliance with the Agreement because it does not provide Cristian with the 'adjudication on

[2] Plaintiffs' assertion that the Government has "abandoned" its jurisdictional arguments is without merit. Opp. at 9. While the Government did not seek a stay on the grounds that the district court lacked jurisdiction, such arguments are still before the Court on appeal of the district court's order.

the merits.'" Opp. 16. That misses the point. The Government acknowledges that the Indicative Asylum Decision is not an "adjudication on the merits," since USCIS cannot adjudicate an asylum application for someone who is outside the country. But the question is whether, as a matter of contract law and equitable principles, compelling the facilitation of Cristian's return is appropriate—and that turns in part on what benefit the order would bring to Cristian, the class, or the public. *See L.J. v. Wilbon*, 633 F.3d 297, 304–05 (4th Cir. 2011). The answer is none. The Indicative Asylum Decision makes clear that USCIS must deny Cristian's asylum application as a TdA member, and would deny asylum as a matter of discretion [redacted] A "non-adversarial asylum interview" (Opp. 18) would not change any of that. Under these circumstances, Cristian's asserted "procedural rights" to have his asylum application adjudicated prior to removal does not warrant the extraordinary remedy awarded below.

Although it would be entirely ineffective, the "facilitation" order threatens to impose constitutionally significant burdens on the Government. It is undisputed in this action that Cristian is currently in the custody of a foreign government, and the Government lacks the power to *direct* his return. For the Government to *request* his return would be an act of foreign affairs, an area constitutionally assigned to the Executive Branch, and which courts must be very cautious not to intrude upon. *See, e.g.*, *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936). To be

clear, the Government acknowledges this Court's ruling that such as order may be appropriate in certain cases. But compelling the return of an [redacted] TdA member and convicted felon, for the sole purpose of adjudicating an asylum application that necessarily will not result in any different outcome, cannot be considered equitable in light of the constitutional and practical difficulties at stake.

## III. The Balance of Equities Favors a Stay Pending Appeal

For many of the same reasons discussed above, the balance of the equities also supports a stay: the district court's order burdens the Government and the public but would not accomplish anything productive for Cristian.

To start, it is important to recall that this is ultimately a dispute over contract interpretation, not constitutional law or even statutory compliance. The Government maintains that it has properly construed the settlement agreement, but at worst the Government acted reasonably in construing the settlement as limited to the Title 8 context. Class Counsel's appeals to the public interest in seeing the Government forced to "follow the law" (Opp. 22) are therefore misdirected.

Moreover, facilitating return of an alien from the custody of a foreign sovereign is not an order that should be issued lightly, given the deep constitutional friction it creates. Plaintiffs cite *Abrego Garcia* for the proposition that the "Government is not irreparably harmed by facilitating … the return of a person … who was wrongfully removed from the United States." Opp. 21. But this puts the

cart before the horse. Here, the parties dispute whether Cristian's removal violated the settlement agreement; the Court of Appeals should resolve that dispute before giving force to a constitutionally and practically problematic order requiring facilitation of his return.

Finally, there is no meaningful chance that even successful return would accomplish anything for Cristian, given that he is barred from obtaining asylum and given USCIS's exercise of discretion relating to his . To be sure, "process" is important. Opp. 22. But procedural niceties alone do not justify ordering the Government to facilitate from foreign custody the return of an  TdA member and convicted felon. Nor would such an order advance the public interest by any measure.

## CONCLUSION

This Court should stay the district court's order pending appeal.

DATED: May 13, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation

YAMILETH G. DAVILA
Assistant Director

ERHAN BEDESTANI
Trial Attorney

*/s/Richard Ingebretsen*
RICHARD G. INGEBRETSEN
Trial Attorney (DC Bar No. 1736200)
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-4848
Fax: (202) 305-7000
richard.ingebretsen@usdoj.gov

*Counsel for Defendants-Appellants*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 2,183 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 365 in proportionally spaced 14-point Times New Roman typeface.

*/s/ Richard Ingebretsen*
Richard G. Ingebretsen
Counsel for Appellants

**CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2025 I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Richard Ingebretsen*
Richard G. Ingebretsen
Counsel for Appellants